UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
RAFFAELE M. PANDOZY,

                    Plaintiff,

    - against -

ROBERT J. GUMENICK, P.C.,

                    Defendant.
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/09

MEMORANDUM and ORDER

07 Civ. 1242 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before this Court is defendant Robert Gumenick's motion to dismiss the Second Amended Complaint brought against him by Raffaele Pandozy. It alleges that defendant committed legal malpractice during his representation of plaintiff in connection with the sale of plaintiff's cooperative apartment. Among other reasons, defendant moves to dismiss this action as untimely under the applicable statute of limitations. For the reasons set forth below, we grant defendant's motion on this ground.

### BACKGROUND

The underlying facts need not be addressed in detail here because we are not the first court to confront the events surrounding the sale of plaintiff's apartment. See Pandozy v. Segan, 518 F. Supp. 550, 552-53, 559 (S.D.N.Y. 2007); Pandozy v. Tobey, No. 06 Civ. 12885 (CM), 2007 WL 2815627, at *1 (S.D.N.Y. Sep. 24, 2007). The basic narrative for our purposes is that

1

after an unsuccessful attempt to extricate himself from the contract to sell his apartment and to avoid the specific performance order that the purchaser obtained against him, plaintiff has spent the better part of the last four years suing everyone involved with the sale. After being barred by the New York state courts from bringing further actions arising out of the apartment sale, he filed three actions in federal court. The two other cases have been dismissed with both decisions finding plaintiff to be a vexatious litigant and enjoining him from filing further suits arising out of the apartment sale and the ensuing litigation. See Segan, 518 F. Supp. at 559; Tobey, 2007 WL 2815627, at *1.

In this action, filed on February 16, 2007, prior to the federal preclusion orders just cited, plaintiff initially proceeded pro se against many of the lawyers who represented him in the sale of his apartment and the state court litigation that followed. Upon review of the initial complaint, we ordered plaintiff to specify how each of the defendants committed an act (or made an omission) that constituted malpractice. Plaintiff then retained counsel and amended the complaint but only advanced allegations against Gumenick. Thus, we dismissed the other defendants from the case by an Order dated October 11, 2007. Following another amendment of the complaint, the parties proceeded to brief the instant motion.

We now summarize the history of the relationship between the parties. Defendant agreed to represent plaintiff in connection with the apartment sale when plaintiff's first attorney became unavailable. Second Amended Complaint ¶ 8. On January 2, 2004, at plaintiff's request, defendant attempted to terminate the contract by sending a letter to the purchaser's attorney. Id. at ¶¶ 12-14. This effort was rejected by the purchaser's attorney by a letter dated January 6. See id. ¶16; Def. Br. Ex. C at 62. On or about January 8, plaintiff fired defendant as his counsel and began representing himself in his efforts to terminate the contract. See id. at 30 (letter from plaintiff to purchaser's attorney stating "I have not retained an attorney, you may communicate directly with me"); Original Complaint ¶ 22 (stating that after plaintiff received the letter from the purchaser's attorney refusing to terminate the contract, plaintiff fired defendant). By the end of the month, the purchaser instituted the specific performance action against plaintiff and he hired various other counsel to defend him (these were the other defendants originally sued in this action). After summary judgment was granted against plaintiff, he re-hired defendant to represent him in the appeal and in connection with the court-ordered closing. See Def. Br. 5, Ex. G. After the appeal was denied, plaintiff appeared pro se and filed a motion to reargue, which was denied. See id. Exs. G, H.

3

Defendant has not represented plaintiff since the initial appeal of the specific performance order.

In the instant suit, plaintiff claims that defendant was negligent in preparing the January 2 letter because defendant failed to invoke certain provisions of the contract that would have successfully terminated the contract. Second Amended Complaint at ¶¶ 20, 22-23. We do not find it necessary to review the contractual provisions that plaintiff claims would have excused his performance, but simply note that some of these provisions were not raised in his defense in the specific performance action.[1] In addition, plaintiff does not contend defendant committed malpractice in his representation of plaintiff during the appeal from the specific performance order.

## DISCUSSION

### I. Motion to Dismiss Standard

While a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, a plaintiff cannot rely on a "formulaic recitation of the elements of a cause of action" and must, at a minimum, sufficiently plead the facts underlying the claim "to raise the right to relief above the speculative level on the assumption that all the

---

[1] Plaintiff's arguments during the specific performance action were that the purchaser was not willing, ready, and able to consummate the transaction and that plaintiff "had a right to cancel the contract because [the purchaser] did not obtain the unconditional approval of the Board of Directors." Def. Br. Ex. C at 8-9 (N.Y. Supreme Court order granting purchaser specific performance).

4

allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted).

In considering a Rule 12(b)(6) motion to dismiss, we accept as true the facts alleged in the amended complaint, drawing all reasonable inferences in plaintiffs' favor. Bolt Elec. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). In addition, we "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." Carruthers v. Flaum, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005).

## II. Statute of Limitations and the Continuous Representation Doctrine

The statute of limitations for a claim of legal malpractice is three years regardless of whether the underlying claim is based in tort or contract. See N.Y. C.P.L.R. 214(6); Chase Scientific Research, Inc. v. NIA Group, Inc., 96 N.Y.2d 20, 24, 749 N.E.2d 161, 162 (2001). Such an action accrues not when the plaintiff discovers the legal malpractice, but when the malpractice is committed. Shumsky v. Eisenstein, 96 N.Y.2d 164,

5

166, 750 N.E.2d 67 (2001). Defendant argues that plaintiff's claim is barred by the three year statute of limitations because his claim accrued no later than January 16, 2004, and this case was not filed until February 16, 2007 -- three years and one month later.[2] Plaintiff responds that the continuous representation doctrine renders the usual statute of limitations inapplicable in this case.

The continuous representation doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." Greene v. Greene, 56 N.Y.2d 86, 94, 436 N.E.2d 496 (1982). Thus, the doctrine protects a plaintiff who maintained an ongoing relationship with his attorney by "toll[ing] the running of the Statute of Limitations on the malpractice claim until the ongoing representation is completed." Shumsky v. Eisenstein, 96 N.Y.2d 164, 167-68, 750 N.E.2d 67 (2001). To invoke the continuous representation doctrine, a plaintiff must

---

[2] Any malpractice committed by defendant in attempting to terminate the contract arguably accrued by January 5, 2008 when defendant sent a final letter to the purchaser's attorney. Def. Br. Ex. C. However, we use the January 16, 2008 date because on that date, plaintiff sent his own letter to the purchaser's attorney to terminate the contract and stated explicitly that he was no longer represented by defendant. Id. Thus, defendant could not have committed malpractice with respect to the apartment sale after that date.

6

establish: "(1) ongoing representation <u>connected to the specific matter at issue in the malpractice action</u>, and (2) clear indicia of an <u>ongoing, continuous, developing and dependent relationship</u> between the client and the attorney." Icahn v. Todtman, Nachamie, Spizz & Johns P.C., No. 99 Civ. 11783 (WHP), 2001 WL 1160582, at *3 (S.D.N.Y. Oct.1, 2001)(citation omitted)(emphasis added). In this case, plaintiff's complaint does not satisfy either of these prongs. Based on the course of the representations at issue in this case, we examine the second prong first.

### A. The Allegedly "Ongoing" Nature of the Representation

With respect to "ongoing, continuous, developing, and dependent relationship" between the parties, a predicate of continuing trust and confidence must exist. See Coyne v. Bersani, 61 N.Y.2d 939, 940, 463 N.E.2d 371 (1984). Accordingly, if there is a breakdown in that relationship, the continuous representation doctrine is not applicable. For example, in Aaron v. Roemer, Wallens & Mineaux, L.L.P., 272 A.D.2d 752, 707 N.Y.S.2d 711 (3d Dep't 2000), the Appellate Division considered a case in which it was clear from correspondence written by the plaintiff that he perceived that his relationship with his attorneys had been "irretrievably broken" prior to the formal termination of this relationship by counsel's withdrawal. The court therefore held that because of

7

this earlier disruption, "the relationship necessary to invoke the continuous treatment rule did not persist until formal termination of the nominal representation by defendants, but rather ceased with the disruption of the client's trust and reliance." Id. at 755.

Similarly, in this case, the relationship between the parties was "irretrievably broken" in the aftermath of defendant's attempt to cancel the contract. Plaintiff's sole allegation of continuous representation - that "Gumenick counseled and advised plaintiff throughout [the specific performance] litigation and also engaged in litigation directly related to the Contract as an attorney of record," Second Amended Complaint ¶ 16 - is belied by plaintiff's correspondence and his pleadings in this and other lawsuits. See Def. Br. Ex. A (Complaint in Pandozy v. Segan, stating that plaintiff terminated Gumenick). In the original complaint filed in this action, plaintiff stated that he fired defendant after the January 2 attempt to terminate the contract was unsuccessful. Original Complaint ¶ 22. And, by January 16, plaintiff was representing himself in his efforts to terminate the contract. See Def. Br. Ex. C at 30 (letter from plaintiff to purchaser's attorney stating "I have not retained an attorney, you may communicate directly with me"). Finally, when the purchaser instituted the specific performance action, plaintiff hired

various other counsel and the record is devoid of any specific allegations that defendant even met with the other counsel or plaintiff to discuss the case. See Panigeon v. Alliance Navig. Line, Inc., No. 96 Civ. 8350 (SAS) 1997 WL 473385, at *5 (S.D.N.Y. Aug. 19, 1997)("Plaintiffs' broad allegations that [the defendant] provided further representation in connection with [the transaction at issue] generally are not sufficient to merit application of the continuous representation doctrine in the absence of more specific allegations that the matters which gave rise to the claim were ongoing matters in which [plaintiffs] were represented." (internal quotation marks and citation omitted)]. It was only when plaintiff decided to appeal from the specific performance order that defendant was re-hired. Based on this evidence, all of which comes from the plaintiff, we find that the attorney-client relationship upon which the malpractice allegation is based had ceased at least by January 16, 2008, more than three years before this action was filed. See De Carlo v. Ratner, 204 F. Supp. 2d 630, 637 (S.D.N.Y. 2002).

### B. "Specific Matter at Issue"

Even if there had been no clear break in defendant's representation of plaintiff, plaintiff has not adequately alleged that the "ongoing representation [was] connected to the specific matter at issue in the malpractice action." In other

words, because the initial representation with respect to the apartment sale involved a different subject matter than the appeal of the specific performance action, the continuous representation doctrine is not applicable. This conclusion is supported by a consistent line of New York cases involving similar circumstances. Judge Crotty summarized one of the predominant New York state cases, Goldman v. Akin, Gump, Strauss, Hauer & Feld, LLP, 11 Misc.3d 1077(A), 816 N.Y.S.2d 695 (Sup. Ct. 2006), as follows:

> In Goldman, the plaintiffs were general partners of seven limited partnerships which owned storage facilities. They hired Akin, Gump to represent them in the sale of the facilities when several limited partners expressed objections to the initial terms of the proposed sale. Two dissenting limited partnerships commenced an action over the eventual sale, and Akin Gump represented plaintiffs in the ensuing arbitration. At the time of the initial engagement, Akin, Gump explicitly informed the plaintiffs that "they were available if any further litigation occurred...." Nevertheless, the New York Supreme Court ruled that the representation in the sale and the representation in the litigation were separate matters. Accordingly, the plaintiff could not claim tolling under the continuous representation doctrine.

Offshore Express, Inc. v. Milbank, Tweed, Hadley, & McCloy, No. 03 Civ. 4260 (PAC), 2007 WL 760419, at *3 (S.D.N.Y. Mar. 13, 2007)(internal citations omitted). Thus, the rule in New York is that "a corporate transaction and litigation in some way

10

related to that transaction should not be considered the same specific matter, absent unique circumstances." Id. at *4. Here, we find that no such circumstances exist, especially since plaintiff was represented by other lawyers before re-hiring defendant. See Docster v. Levene, No. 03 Civ. 1193 (FJS), 2005 WL 1388899, at *5 (N.D.N.Y. June 8, 2005)("[O]nce a client consults with another attorney with respect to the matter in which his initial attorney represented him, continuous representation clearly ends because, at that point, the client is able to question the attorney's actions and to pursue remedies for perceived wrongs."). Thus, plaintiff's reliance on the continuous representation doctrine fails and the case must be dismissed as untimely.[3]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.

Dated: New York, New York
May 23, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[3] We also dismiss plaintiff's breach of fiduciary duty cause of action because it is duplicative of the legal malpractice claim. See Mecca v. Shang, 258 A.D.2d 569, 570 685 N.Y.S.2d 458 (2d Dep't 1999). Plaintiff's allegations sound only in negligence and do not allege that defendant breached his duty of loyalty to his client. See Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 16 Misc. 3d 1051, 1056, 843 N.Y.S.2d 749, 755-56 (Sup. Ct. 2007).

11

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
David A. Gabay, Esq.
4250 Veterans Memorial Highway, Suite 3040W
Holbrook, NY 11741

**Attorney for Defendant**
Brett A. Scher, Esq.
Ryan McElduff, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017